NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0494n.06

No. 14-2194

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DIANA CURTIS, | ) | **FILED** |
| | ) | Jul 10, 2015 |
| Plaintiff- Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| STATE FARM FIRE AND CASUALTY CO., | ) | |
| | ) | OPINION |
| Defendant -Appellee. | ) | |

---

BOGGS and BATCHELDER, Circuit Judges, and HUCK, District Judge.[*]

BOGGS, Circuit Judge. Plaintiff-Appellant Diana Curtis, a Michigan resident, contracted with State Farm to insure her home. In 2011, Curtis claimed a loss due to theft during a home break-in. In 2012, State Farm refused to pay. In 2013, Curtis sued and then, after State Farm removed her suit to federal court, voluntarily dismissed the suit. In 2014, Curtis sued again. But she sued too long after State Farm's initial refusal. Because the statute of limitations had run on her claim, the district court granted State Farm's motion to dismiss. Curtis timely appealed. We affirm the judgment of the district court for reasons that follow.

On September 9, 2011, Curtis filed a claim with State Farm "for a break-in and theft that occurred at her residence that very day. . . . In a letter dated October 26, 2012, State Farm denied Curtis's claim [and] stated that, in compliance with the home owner's insurance contract and Michigan law, any legal action taken against State Farm must be filed *within one year of the issuance of denial . . . .*" (emphasis added). Eleven months later, on September 26, 2013, Curtis

---

[*] The Honorable Paul C. Huck, Senior District Judge for the Southern District of Florida, sitting by designation.

1

sued in state court. State Farm removed that first case to federal court and, on December 13, 2013, Curtis voluntarily dismissed the case. The contractual-limitations term, like the statute of limitations, was tolled during the seventy-eight days that Curtis's first suit was pending. So the one-year statute of limitations expired on January 11, 2014, one year and seventy-eight days after the date on which State Farm denied Curtis's claim. Four days later, on January 15, 2014, Curtis filed the present action, again in state court. By the time Curtis filed this second suit, one year and eighty-two days had elapsed since State Farm had denied her claim. State Farm removed again to federal court and, on the ground that Curtis's statutory and contractual period limiting her right to sue had run, moved to dismiss. The district court granted State Farm's motion to dismiss. Curtis timely appealed.

Curtis argues that the district court should have computed the one-year statutory and contractual period of limitations according to Federal Rule of Civil Procedure 6, which provides for an extra 3 days for certain actions, *see* Fed. R. Civ. P. 6, rather than according Michigan rules, which do not, *see* Mich. Comp. Laws § 500.2833(1)(q).

Long-standing precedent intends "to insure that, in all cases where a federal court is exercising jurisdiction solely because of . . . diversity . . . , the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court." *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) (discussing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). To this end, federal courts sitting in diversity apply the statues of limitations of the jurisdictions in which they sit. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 394 (observing that the Supreme Court has "generally referred to state law for tolling rules, just as [it] ha[s] for the length of statutes of limitations"); *cf. West v. Conrail*, 481 U.S. 35, 39 n.4 (1987) (observing that "state law not only provides the appropriate period of limitations but also

2

determines" when "service must be effected"). To allow a cause of action "longer life in the federal court than it would have had in the state court" would be "adding something to the cause of action." *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533-34 (1949).

Curtis cites *Arvia v. Black*, 722 F. Supp. 644 (D. Colo. 1989), for the proposition that "Rule 6 applies to the computation of a state statute of limitations." Appellant Br. 22. This statement mischaracterizes *Arvia*'s holding. In that case, the district court adopted "by analogy the method of computation . . . prescribe[d]" by Rule 6 to the construction of a Colorado state statute of limitations. *Arvia*, 722 F. Supp. at 647. In the course of doing so, the court observed that the Colorado Rule of Civil Procedure "is virtually identical" to the Federal Rule "and the result under state law presumably would be the same." *Ibid.* So *Arvia* does not guide a court presented with the question of whether to compute a state statute of limitations according to Federal Rule 6 when that computation definitely differs—indeed, is advanced *because* it differs—from the state procedure.

Next, Curtis alleges that State Farm's denial letter failed to trigger the statute of limitations because State Farm addressed it to her lawyer. Curtis alleges that she had retained the lawyer "for the limited purpose of appearing with the Plaintiff and her grandchildren in the defendant's attorney's office to be examined under oath in a deposition like setting." Appellant Br. 8. Curtis alleges that she did not "instruct[t], reques[t, ] or authoriz[e] State Farm to mail, send[,] or communicate anything else related to the claim to or through" her lawyer. *Ibid.* But once Curtis informed State Farm that she had retained counsel, the Michigan Rules of Professional Conduct *prohibited* State Farm's lawyer from communicating directly with Curtis. Mich. R. Prof'l Conduct 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter

3

by another lawyer . . . .").  Indeed, violating this "no-contact rule can result in disqualification of the offending lawyer."  2 Geoffrey C. Hazard, Jr. et al., The Law of Lawyering § 41.02 at 41-4 (4th ed. 2015).

Third, in Michigan, an insured's notice to an insurance company of loss tolls the statute of limitations until the insurance company denies the claim.  *Tom Thomas Org. v. Reliance Ins. Co.*, 242 N.W.2d 396 (Mich. 1976).  Nearly two decades ago, Michigan's intermediate court of appeals held that an insurance company's denial occurs when it is mailed by the insurer, not when it is received by the insured.  *Saad v. Citizens Ins. Co. of Amer.*, 576 N.W.2d 438 (Mich. Ct. App. 1998).  Although this holding neither would bind the Michigan Supreme Court nor prevent the Michigan Legislature from creating an opposite rule, it guides this court as to the status of Michigan law, at least until the presentation of evidence to the contrary.  If a state's highest court has not addressed the substantive state-law question at issue, a federal court deciding a diversity case "must anticipate how the relevant state's highest court would rule and may rely on the state's intermediate appellate court decisions . . . in making this determination." *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (internal quotation marks omitted).  "Where the Michigan Supreme Court has not addressed an issue, we may look to opinions issued by the Michigan appellate courts and should follow their reasoning unless we are convinced by other persuasive data that the highest court of the state would decide otherwise."  *Tooling, Mfg. and Technologies Ass'n v. Hartford Fire Ins. Co.*, 693 F.3d 665, 670 (6th Cir. 2012) (internal quotation marks omitted).  Curtis's suggestions, *see, e.g.*, Appellant Br. 14 ("Plaintiff vigorously disagrees with the holding in *Saad* . . . ."), do not persuade us that the Michigan Supreme Court would decide otherwise.  So the district court's reliance on *Saad* was correct.

4

Finally, the district court correctly concluded that Curtis failed to state a claim for intentional infliction of emotional distress (IIED). On appeal, Curtis fails to indicate "extreme and outrageous" behavior. A defendant is liable for IIED only

> where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

Restatement (2d) of Torts § 46, cmt. g. The examples of State Farm's conduct that Curtis alleges to be outrageous include:

(1) "[P]alpable cynicism about [Curtis's] claim";

(2) Requirements that Curtis provide bank statements;

(3) Denial of claim based on a lack of form that State Farm previously had acknowledged receiving; and

(4) Requirement that Curtis and her grandchildren "submit to questioning by [State Farm's] attorney in a deposition like setting."

Appellant Br. 24. Curtis suggests that, taken together, these actions constituted a "witch hunt" which, in turn, constituted outrageous conduct. But no reasonable person would consider an insurance company's conduct outrageous if it simply doubted the veracity of a claim, required and even lost forms, and erected other procedural hurdles.

In conclusion, Curtis's contract, like Michigan law, required Curtis to bring her claim within one year. Although the limitation period was tolled both between her claim and State Farm's denial and during the pendency of her first suit, Michigan law clearly provides that those

5

tolling periods were insufficiently long to save the tardiness of her present suit. We AFFIRM the

district court's dismissal of this case.